134 Nev., Advance Opinion 56

# IN THE SUPREME COURT OF THE STATE OF NEVADA

CLARK COUNTY, A POLITICAL
SUBDIVISION OF THE STATE OF
NEVADA,
Appellant,
vs.
HQ METRO, LLC, AN ARIZONA
LIMITED LIABILITY COMPANY;
PROJECT ALTA, LLC, A NEVADA
LIMITED LIABILITY COMPANY;
PROJECT ALTA II, LLC, A NEVADA
LIMITED LIABILITY COMPANY;
PROJECT ALTA III, LLC, A NEVADA
LIMITED LIABILITY COMPANY; AND
PROJECT ALTA LIQUIDATING TRUST
U/A/D 12/31/09, BY AND THROUGH
MARK L. FINE & ASSOCIATES, A
NEVADA CORPORATION,
INDIVIDUALLY AND AS TRUSTEE,
Respondents.

No. 71877

**FILED**

AUG 0 2 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a final judgment in an action for eminent domain.
Eighth Judicial District Court, Clark County; Ronald J. Israel, Judge.

*Affirmed.*

Steven B. Wolfson, District Attorney, and Leslie A. Nielsen and Laura C.
Rehfeldt, Deputy District Attorneys, Clark County,
for Appellant.

Law Offices of Brian C. Padgett and Amy L. Sugden, Brian C. Padgett, and
Jeremy B. Duke, Las Vegas,
for Respondents.

SUPREME COURT
OF
NEVADA

(O) 1947A

18-29632

BEFORE THE COURT EN BANC.[1]

## OPINION

By the Court, CHERRY, J.:

This appeal challenges a district court order apportioning just compensation proceeds in an action for eminent domain. Nevada Power Company, d/b/a Nevada Energy (NV Energy), filed a complaint in eminent domain to obtain an easement for the installation of electrical transmission lines on property owned by respondent HQ Metro, LLC, and leased to appellant Clark County. In October 2013, the district court entered an order allowing NV Energy to occupy the easement area and construct the transmission lines. Before NV Energy physically entered the property to begin construction, however, HQ Metro sold the property to Clark County. The district court concluded that HQ Metro was entitled to compensation for the permanent easement because it was the owner at the time of the order granting occupancy, and the court apportioned the proceeds accordingly. On appeal, HQ Metro and Clark County dispute which one is entitled to compensation for the permanent easement.

We conclude that the right to compensation vested when the district court entered the order granting immediate occupancy in October 2013, which permitted NV Energy to permanently occupy the easement area and to construct and maintain the transmission lines. Thus, the district court properly concluded that HQ Metro, as the property's owner at the time of the taking, was entitled to compensation for the permanent easement.

---

[1]The Honorable Ron D. Parraguirre, Justice, voluntarily recused himself from participation in the decision of this matter.

 

## FACTS AND PROCEDURAL HISTORY

In May 2013, NV Energy filed a complaint in eminent domain to acquire certain easements to construct, operate, and maintain electrical transmission lines on property located at 400 S. Martin Luther King Boulevard in Las Vegas, Nevada. NV Energy sought both a temporary construction easement of 36,863 square feet and a permanent easement of 16,861 square feet for the transmission lines across the property. HQ Metro was named in the complaint as the property's record owner. The complaint also named Clark County as a tenant based on a recorded memorandum of lease and purchase option with four Project Alta entities.[2] The lease provided for the development and 30-year lease of office space and a parking garage on the property to Clark County for sublease to the Las Vegas Metropolitan Police Department (LVMPD). The lease also gave Clark County the option to purchase the property three years after LVMPD commenced operations on the property.

After filing the complaint, NV Energy moved for immediate occupancy under NRS 37.100. Negotiations ensued and the parties entered into a stipulation and order for immediate occupancy, conditioned on NV Energy depositing $281,000 with the district court. The stipulation provided that NV Energy was acquiring the easements for public use and authorized NV Energy to immediately occupy both the temporary and

---

[2]The Project Alta entities identified in the complaint included respondents Project Alta, LLC; Project Alta II, LLC; Project Alta, III, LLC; and Project Alta Liquidating Trust U/A/D 12/31/09, by and through Mark L. Fine & Associates. Although the nature of their interest in the property is not entirely clear from the record, they moved collectively with HQ Metro for summary judgment as the prior landowners entitled to the condemnation proceeds. Therefore, we refer to the prior landowners collectively as HQ Metro.

 

permanent easement areas for the purposes of permitting, construction, operation, and maintenance of the transmission lines and associated facilities on the property. The stipulation further restrained and enjoined HQ Metro from interfering with NV Energy's occupancy and performance of the work required for the easements. On October 15, 2013, the district court filed an order granting immediate occupancy pursuant to the stipulation's terms. Shortly thereafter, NV Energy deposited the sum with the court, and the order granting immediate occupancy was recorded against the property.

About a year after the order granting immediate occupancy was entered, but before NV Energy began construction on the project, HQ Metro sold the property to Clark County for $205 million. The September 2014 purchase and sale agreement transferred from HQ Metro to Clark County the real property together with "any and all of [HQ Metro's] rights, easements, licenses and privileges presently thereon or appertaining thereto." Attached to the agreement was a list of title exceptions that included the order granting occupancy, but the agreement did not mention the compensation from the condemnation case or who was entitled to it. The grant, bargain, and sale deed, recorded in October 2014, conveyed title to Clark County subject to an attached list of exceptions, which also included the order granting occupancy to NV Energy.

In January 2015, NV Energy entered the property to begin construction of its facilities. Construction of the transmission lines was completed four months later in May 2015.

HQ Metro and Clark County each moved for summary judgment and claimed entitlement to the just compensation proceeds. HQ Metro argued that it was entitled to the proceeds as the landowner at the time NV Energy obtained the order granting immediate occupancy on October 15, 2013. Conversely, Clark County asserted that the right to compensation did not vest until NV Energy physically entered the property to install the transmission lines in January 2015.

The district court entered a summary judgment order determining that HQ Metro was entitled to damages for the permanent easement because it owned the property when the permanent construction easement was granted in October 2013. The court also determined that LVMPD was entitled to damages under the temporary construction easement. Thereafter, the parties reached a global settlement for the total amount of $850,000 as compensation due for both the temporary and permanent easements. Consistent with its summary judgment order, the district court apportioned $775,000 to HQ Metro as damages for the permanent easement. Clark County filed this appeal.

## DISCUSSION

Under both the Nevada and United States Constitutions, the government may not take private property for public use without the payment of just compensation. Nev. Const. art. 1, § 8(6) ("Private property shall not be taken for public use without just compensation having been first made."); *see also* U.S. Const. amend. V ("[N]or shall private property be taken for public use, without just compensation."). The parties agree that the owner of the property at the time of the taking is entitled to the compensation proceeds but they disagree as to the event that constituted the taking. HQ Metro argues that the taking occurred when the court

entered the order granting immediate occupancy in October 2013, whereas Clark County argues that the taking did not occur until NV Energy entered the property to begin construction in January 2015.

Whether a taking has occurred presents a question of law that we review de novo. *See City of Las Vegas v. Cliff Shadows Prof'l Plaza, LLC*, 129 Nev. 1, 11, 293 P.3d 860, 866 (2013). "A taking can arise when the government regulates or physically appropriates an individual's private property. Physical appropriation exists when the government seizes or occupies private property or ousts owners from their private property." *ASAP Storage, Inc. v. City of Sparks*, 123 Nev. 639, 647, 173 P.3d 734, 740 (2007). When a condemnation proceeding is commenced, NRS 37.100 allows the district court to permit a plaintiff, upon a deposit with the court, to occupy the premises sought to be condemned pending the entry of judgment. *See* NRS 37.100(2), (6). The court may "restrain the defendant from hindering or interfering with the occupation of the premises and the doing thereon of the work required for the easement, fee or property rights." NRS 37.100(8).

The owner of the property at the time of the taking is the one entitled to compensation rather than a subsequent purchaser who owned the property when compensation was paid. *Argier v. Nev. Power Co.*, 114 Nev. 137, 139, 952 P.2d 1390, 1391 (1998). In *Argier*, the power company filed a complaint to obtain an easement across land owned by the Argiers. *Id.* at 138, 952 P.2d at 1390. The district court granted immediate occupancy and the power company installed the power lines, but the Argiers sold the property to the county before the court determined the value of the easement and the amount of compensation. *Id.* at 138, 952 P.2d at 1390-91. Consequently, the power company argued it no longer had a duty to

compensate the Argiers for the easement because the property was sold before the taking occurred when the agency received title in the final order of condemnation, whereas the Argiers argued that the taking occurred at the point of physical occupation of the property, before it was sold. *Id.* at 138-39, 952 P.2d at 1391. We held that the power company "effected a taking once it entered upon the land," and that equity mandates that the right to compensation vests when the condemning agency enters into possession of the landowner's property. *Id.* at 141, 952 P.2d at 1392-93. Because the Argiers' right to compensation vested when the power company entered their property, before the sale to the county, the Argiers were entitled to compensation. *Id.* at 142, 952 P.2d at 1393.

The decision in *Argier*, however, is not directly dispositive of the issue before us because, in that case, the power company physically entered the property to install the power lines before the land was sold, and, thus, the *Argier* court made no distinction between the order for immediate occupancy and the physical entry onto the land. Nonetheless, the reasoning in *Argier* is instructive. In particular, the *Argier* court explained that because compensation for a taking is intended as a substitute for the owner's lost interest in the property, the person who owns the property at the time of the taking is entitled to the compensation:

> When the government interferes with a person's possession of his/her property, the owner loses an interest in that property. The award of just compensation is a substitute for that lost interest in the property. When the owner sells what remains of her property, she does not also sell the right to compensation. If she did, the original owner would suffer a loss and the purchaser would receive a windfall.



*Id.* at 140, 952 P.2d at 1392 (recognizing agreement amongst other jurisdictions on the issue).

In this case, the order granting immediate occupancy constituted a substantial governmental interference with HQ Metro's property rights. "The bundle of property rights includes all rights inherent in ownership, including the inalienable right to possess, use, and enjoy the property." *ASAP Storage*, 123 Nev. at 647, 173 P.3d at 740 (internal quotations omitted). The order authorized NV Energy to permanently occupy the easement area for the purpose of constructing and maintaining the transmission lines and associated facilities on the property, and restrained and enjoined HQ Metro from interfering with NV Energy's occupation and performance of the work required for the easement. The order restricted HQ Metro's full use and enjoyment of the property, and the entitlement to compensation is a substitute for that lost interest. When HQ Metro sold the property, it conveyed title subject to the occupancy order. Thus, we conclude that the order granting immediate occupancy constituted a taking of property rights and the right to compensation vested at that time. Because HQ Metro was the owner of the property, it was entitled to compensation for the permanent easement.[3]

---

[3]Clark County cites *Buzz Stew, LLC v. City of North Las Vegas* for the holding that a former property owner had failed to establish that a taking occurred while it owned the property, and therefore, a provision in the sales contract retaining only the right to proceeds from a future condemnation action reserved no property interest in the former owner. 131 Nev. 1, 7, 341 P.3d 646, 650 (2015). *Buzz Stew* is distinguishable, however, because here, the parties entered into a stipulation and order providing that the easements were being acquired for public use and establishing the date of occupancy as October 15, 2013. Thus, a taking occurred and the right to compensation vested while HQ Metro owned the property.

SUPREME COURT
OF
NEVADA

(O) 1947A

Clark County maintains that a taking did not occur until NV Energy could no longer abandon the proceeding, when construction on the project commenced. We reject this argument because the order granting immediate occupancy constituted an injury to HQ Metro's property rights. *See Argier*, 114 Nev. at 140, 952 P.2d at 1391 ("Damages for the taking of land or for the injury to the land not taken belong to the one who owns the land at the time of the taking or injury, and they do not pass to a subsequent grantee of the land except by a provision to that effect in the deed or by separate assignment." (quoting 29A C.J.S. Eminent Domain § 194 (1992))). Although a plaintiff may abandon the proceeding at any time until 30 days after the final judgment, if the plaintiff has been placed in possession of the premises under NRS 37.100, the defendant is entitled to damages from occupancy of the abandoned property. NRS 37.180(1), (2). Abandonment "merely results in an alteration in the property interest taken—from full ownership to one of temporary use and occupation." *United States v. Dow*, 357 U.S. 17, 26 (1958). Because the order granting occupancy constitutes an injury to property rights, the right to compensation vested at that time. *See Argier*, 114 Nev. at 141, 952 P.2d at 1393 (holding that equity mandates vesting occurs when the condemning agency enters into possession of the landowner's property).

Finally, Clark County argues that allowing HQ Metro to keep the condemnation proceeds will result in a windfall to HQ Metro because there is no evidence that the purchase price was discounted for any taking by NV Energy, and that an appraisal obtained by HQ Metro in 2013 did not mention the condemnation proceeding or the easement. This court will not speculate on whether the purchase price accounted for the property interest taken by the condemnation proceeding as it has no bearing on the legal

 

issue of whether the order granting immediate occupancy constituted a taking of property rights. As we explained in *Argier*, the award of just compensation is a substitute for the owner's loss occasioned by the taking, and the owner sells what remains of her property. 114 Nev. at 140, 952 P.2d at 1392. "Presumably, the purchaser will pay the seller only for the real property interest that the seller possesses at the time of the sale and can transfer." *Brooks Inv. Co. v. City of Bloomington*, 232 N.W.2d 911, 918 (1975). Moreover, Clark County had notice of the condemnation proceeding and stipulated to entry of the order granting immediate occupancy, and Clark County could have contracted for the right to the just compensation proceeds when it purchased the property from HQ Metro. *See Dow*, 357 U.S. at 27 (rejecting an equitable argument where the purchaser had full notice of the condemnation proceeding and had "available contractual means by which he could have protected himself vis-a-vis his grantors against the contingency that his claim" for compensation would be subsequently invalidated under the law). Thus, the equities do not lie in Clark County's favor.

 

## CONCLUSION

We conclude that the right to compensation vested when the district court entered the order for immediate occupancy, permitting NV Energy to occupy the permanent easement area and enjoining HQ Metro from interfering with that occupancy. Consequently, HQ Metro as landowner was entitled to compensation for the permanent easement, and we affirm the district court's order apportioning the proceeds.

_____, J.
Cherry

We concur:

_____, C.J.
Douglas

_____, J.
Gibbons

_____, J.
Pickering

_____, J.
Hardesty

_____, J.
Stiglich